IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES R. WELCOME,
    Plaintiff,

vs.                                     Case No.:  3:13cv608/MCR/EMT

RAYMOND E. MABUS,
Secretary of the Navy,
    Defendant.
_____/

## SECOND REPORT AND RECOMMENDATION

Plaintiff James R. Welcome ("Welcome"), proceeding pro se, initiated this employment discrimination action against Defendant Raymond E. Mabus, Secretary of the Department of the Navy ("Secretary Mabus"), by filing a complaint under 42 U.S.C. § 2000e, *et seq.* (Title VII of the Civil Rights Act of 1964) (doc. 1).  Welcome subsequently filed a Second Amended Complaint, which is the operative pleading (doc. 28).  Secretary Mabus filed a motion to dismiss, which the court granted in part (*see* doc. 40).  The court dismissed with prejudice the following claims:  (1) Welcome's claim that Secretary Mabus discriminated against him on account of his race by failing to refer or select him for three positions as a Supervisory Industrial Specialist, GS-1150-12/13, vacancy announcement number 00-MR52-SPL-0726, (2) Welcome's claim that Secretary Mabus unlawfully amended Welcome's formal EEO complaint, and (3) Welcome's claim that Secretary Mabus failed to comply with the notification requirement of 29 C.F.R. § 1614.108(g) (*see id.*).  The court allowed Welcome to proceed on the claim accepted for investigation by the Equal Employment Opportunity office of the Department of the Navy ("Agency"), specifically:  was Welcome discriminated against based on his race (African American) when he was not referred for consideration for the thirty-three (33) positions listed in the EEO Counselor's Report (*see* doc. 40;

doc. 54, Ex. F).[1]  The parties agree that the 33 positions at issue are identified in the Agency's Report of Investigation ("ROI")  (*see* doc. 54, Secretary Mabus's Statement of Facts ¶ 3, and Ex. F, Report of Investigation; doc. 61, Welcome's Statement of Facts at 3, ¶ 6).

On February 5, 2015, Secretary Mabus filed a motion for summary judgment, a separate supporting statement of facts, and supporting evidentiary material (docs. 53, 54).  On February 9, 2015, the court issued an advisory order concerning summary judgment, which provided the parties with information concerning Rule 56 review and afforded Welcome an opportunity to respond to the motion for summary judgment (doc. 55).  On March 9, 2015, Welcome filed a response, a separate supporting statement of facts, and supporting evidentiary material (docs. 60, 61).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(E); *see also* 28 U.S.C. § 636(b)(1)(B), (C).  Upon review of the parties' submissions, it is the opinion of the undersigned that the motion for summary judgment filed by Secretary Mabus should be granted.

I.    BACKGROUND[2]

Welcome was a member of a class action lawsuit filed in the United States District Court for the Middle District of Georgia, Robinson v. Mabus, Case No. 1:02-cv-94-02 (WLS), comprised of approximately 13,000 class plaintiffs alleging racial discrimination in selections made at various steps in the merit-staffing process used to fill vacancies at the Marine Corps Logistics Base in Albany, Georgia ("the Base") and its detachment at Blount Island, Florida, for the period March 3, 2000 through January 1, 2009 (doc. 54, Secretary Mabus's Statement of Facts ¶¶ 1–2, Ex. A, p. 6; doc. 61, Welcome's Statement of Facts at 1–2, ¶ 1).  The case was settled on June 11, 2010 (*id.*).  The district court's Final Approval Order accepting the settlement allowed a large number of class

---

[1] The Agency's Report of Investigation clarified that although the Agency's Notice of Acceptance of Discrimination Complaint framed the discrimination claim as a non-selection claim, Welcome was not referred to selecting officials for consideration for any of the positions at issue; therefore, the discrimination claim was more accurately characterized as a non-referral claim (doc. 54, Ex. F, p. 5 n.1).

[2] A very detailed description of the background and procedural history of this case is set forth in the first Report and Recommendation issued by the undersigned and adopted by the district judge (*see* docs. 35, 40).  In the interest of brevity and judicial economy, the undersigned will not repeat those facts here.

members the opportunity to file individual claims under the Base's administrative equal employment opportunity program (doc. 54, Ex. A). Welcome filed an individual claim of discrimination with the Agency on April 25, 2011 (*see* doc. 54, Ex. F, Report of Investigation). As previously discussed, the Agency accepted for investigation Welcome's claim of intentional racial discrimination, based upon his non-referral for the thirty-three (33) positions listed in the EEO Counselor's Report (*see id.*).[3]

I. LEGAL STANDARDS

    A. <u>Summary Judgment Standard</u>

In order to prevail on the motion for summary judgment, Secretary Mabus must show that Welcome has no evidence to support his case, or present affirmative evidence to show that Welcome will be unable to prove his case at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Id.*; *accord* <u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F.2d 994, 998 (11th Cir. 1992). Further, the non-moving party must show more than the existence of a "metaphysical doubt" regarding the material facts, <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

---

[3] Welcome's individual claim is limited to one of intentional discrimination, because the parties to the class action settlement stipulated, and the district court found, that no statistical evidence existed to support a finding of adverse impact in any of the vacancies where the class member was not included on a "certificate of eligibles" (a certified list of candidates who are both eligible and qualified for the position) referred to the selecting official authorized to select a candidate to fill the position (Secretary Mabus's Statement of Facts ¶ 3, Ex. D, Declaration of Dr. Candace Williams ¶¶ 2–3). As will be discussed *infra*, Welcome was not referred on a certificate of eligibles for any of the 33 positions at issue (Secretary Mabus's Statement of Facts ¶ 7, Exs. G through HH). Welcome states he was included on a Resume Match List for one of the positions (doc. 61, Welcome's Statements of Facts at 8, ¶ 4). However, he was not included on a certificate of eligibles for that vacancy (doc. 54, Ex. GG; doc. 61, Ex. P55). Inclusion on a Resume Match List is not the same as inclusion on a certificate of eligibles (doc. 54, Ex. E, Declaration of Patsy Fleming).

It is additionally worth mentioning that any issues relating to the Agency's compliance with any statute or regulation relating to veterans' preference is not properly before this Court, because a different administrative framework must be utilized to exhaust such claims, specifically, filing a complaint with the Secretary of Labor and either appealing to the Merit Systems Protection Board or filing an action with the appropriate district court not later than sixty (60) days after the veteran files a written election of which appeals remedy he intends to pursue. 5 U.S.C. §§ 3330a, 3330b.

Case No.: 3:13cv608/MCR/EMT

A mere "scintilla" of evidence or conclusory allegations are insufficient. Celotex Corp., 477 U.S. at 324 (quoting Fed. R. Civ. P. 56). Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 "requires the nonmoving party to go beyond the pleading and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting Celotex Corp., 477 U.S. at 324 (quoting former Fed. R. Civ. P. 56(c), (e))); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994). Evidence presented in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to Plaintiff. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). However, "[w]here the factual context renders the non-moving party's position implausible, it must come up with more persuasive evidence than would otherwise be necessary to defeat summary judgment." In re Fin. Federated Title and Trust, Inc., 347 F.3d 880, 885 (11th Cir. 2003) (citing Matsushita, 475 U.S. at 587, 106 S. Ct. at 1348); *see also* Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742–43 (11th Cir. 1996) ("A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible). A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

    B.    Title VII Standard

Title VII of the Civil Rights Act of 1964 explicitly prohibits racial discrimination in federal employment practices. 42 U.S.C. § 2000e-16(a). A plaintiff can establish a claim for employment discrimination through the use of direct, circumstantial, or statistical evidence. Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Direct evidence is defined as evidence "that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." Black's Law Dictionary 596 (8th ed. 2004); *see also* Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1226 (11th Cir. 1993). Only the most blatant remarks whose intent could only be

to discriminate constitute direct evidence. *Id.* Evidence that merely "suggests discrimination, leaving the trier of fact to infer discrimination based on the evidence" is, by definition, circumstantial. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081–82 (11th Cir. 1990).

In a case in which the plaintiff relies on circumstantial evidence, which is the case here, the claim is evaluated using the three-step framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and Tex. Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). *See* EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination, thus creating a rebuttable presumption that an employer acted unlawfully. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). The Eleventh Circuit has noted that the method of establishing a prima facie case is not fixed, but rather is flexible and dependent on the employment situation. *Id.* (citation omitted). To establish a prima facie case of disparate treatment discrimination a plaintiff must generally show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) the employer treated similarly situated employees outside of the protected class more favorably; and (4) he was qualified to do the job. *See* Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1228 (11th Cir. 2002). Should the plaintiff fail to establish a prima facie case, summary judgment is warranted if there is no other evidence of discrimination. Holifield, 115 F.3d at 1562 (citing Mack v. Great Atl. and Pac. Tea Co., 871 F.2d 179, 182 (1st Cir. 1989)). The standard for demonstrating a prima facie case is not onerous, requiring "only that the plaintiff establish facts adequate to permit an inference of discrimination." *Id.* (citations omitted).

Once the plaintiff has established a prima facie case or shown some other evidence of discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. McDonnell Douglas, 411 U.S. at 802. This justification should be "clear, reasonably specific, and worthy of credence." Hall v. Ala. Ass'n of Sch. Bds., 326 F.3d 1157, 1166 (11th Cir. 2003). The employer, however, need not persuade the court that it was actually motivated by the proffered reason. *See* Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting Burdine, 450 U.S. at 254). Thus the defendant's burden is one of production, not persuasion. Wilson, 376 F.3d at 1087–88. The Eleventh Circuit has stated

that this burden is "exceedingly light." Holifield, 115 F.3d at 1564 (quoting Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994)).

Once the employer satisfies its burden of production by articulating one or more legitimate, nondiscriminatory reasons for its action, the presumption of discrimination is eliminated and the burden of production shifts back to the plaintiff to offer evidence that the alleged reason is a pretext for illegal discrimination. Wilson, 376 F.3d at 1087. The plaintiff can establish that an employer's reasons are pretextual by showing "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004) (quoting Combs, 106 F.3d at 1538). "However, a reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." Springer v. Convergys Customer Mgmt. Group Inc., 509 F.3d 1344, 1349 (11th Cir. 2007) (internal quotation marks and citations omitted). The plaintiff cannot succeed by simply quarreling with the wisdom of the employer's stated reason. *See* Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000) (quotation and citation omitted). Further, the plaintiff cannot establish pretext by "simply arguing or even by showing that he was better qualified" than the selectee. *See* Springer, 509 F.3d at 1349. Instead, the plaintiff must prove that the disparity in qualifications was "of such weight and significance" that no reasonable, impartial person could have chosen the selectee over the plaintiff. *Id.* A plaintiff does not establish pretext by arguing that the defendant's decision was mistaken. *See* Wilson, 376 F.3d at 1092 (quoting Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253 (11th Cir. 2000)). Rather, he must show that the decision was motivated by the plaintiff's race. *Id.*

Finally, despite the shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Wilson, 376 F.3d at 1088 (quoting Burdine, 450 U.S. at 253). Because of this, even though a plaintiff may establish a prima facie case and set forth sufficient evidence to reject the defendant's explanation, if no rational factfinder could conclude that the employer's action was discriminatory, then summary judgment may be warranted. Chapman, 229 F.3d at 1025 n.11 (citing

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105 (2000)).

III.  MATERIAL FACTS FOR PURPOSES OF SUMMARY JUDGMENT

As this case comes before the court on Secretary Mabus's motion for summary judgment, the court views the facts in the light most favorable to Welcome, the nonmoving party. *See* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). The court does so here, referring to Secretary Mabus's statement of undisputed facts, and taking those facts from the parties' pleadings and summary judgment materials of record. Fed. R. Civ. P. 56(c); N.D. Fla. Loc. R. 56.1. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. *See* Montoute v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

With regard to the factual positions asserted by the parties, the court must apply the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> . . . .
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (2010). Facts asserted in hearsay statements which are not subject to a hearsay exception, and thus would not be admissible in evidence, are insufficient to show that a fact is genuinely disputed.

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment, or grant summary judgment if the moving party's motion and supporting materials—including the facts considered undisputed—show that the moving party is entitled to it.  *See* Fed. R. Civ. P. 56(e)(2, 3) (2010).

Applying these standards, the court conveys the following as the material facts.  At all times relevant to this action, the Agency used an automated application processing system known as Resumix (Secretary Mabus's Statement of Facts ¶ 5; *see also* doc. 54, Ex. E, Declaration of Patsy Fleming, p. 11079–80 ¶ 11).  When an Agency management official wished to fill a position/vacancy, the official submitted a Request for Personnel Action ("RPA") and Recruitment Action Supplement ("RAS") to the Human Resources Service Center ("HRSC") (doc. 54, Ex. E, Fleming Decl. Supplement, p. 11083 ¶ 2; *see* doc. 54, Ex. G, p. 1103–04 as an example).[4]  In the RPA and RAS, the selecting official identifies (1) the pay plan, series, and grade level of the position, (2) whether the position is permanent or temporary; (3) the area of consideration ("AOC"), which describes the individuals from whom the agency will consider applications (*e.g.*, individuals currently working in a specific geographic location (identified with a Unit Identification Code ("UIC")), individuals with specific appointment eligibility (such as Veterans Employment Opportunities Act (VEOA) or Veterans' Readjustment Authority (VRA) etc.); (4) the amount of travel that the position requires; (5) the work schedule (*e.g.*, full-time, part-time, or shift work), (6) the required security clearance, if any; (7) whether a physical examination, any type of testing, or a financial disclosure is required; and (8) the "key skills," including required skills and desired skills (the instructions on the request form state "4–8 Key Hard Skills; at least one of the skills is identified as a required skill.  Prioritize required skills if more than one are identified.") (Fleming Decl., pp. 11078–79 ¶¶ 8, 10; Fleming Decl. Supp., p. 11083 ¶ 2, p. 11085–86 ¶ 4, p. 11094 ¶ 26; *see* doc. 54, Ex. G, pp. 1103–04 as an example).  When an applicant submits a resume to the Resumix database, the software system uses imbedded rules to read, identify, and extract skills from the work

---

[4] In this Report, the page references to exhibits in the summary judgment record reflect the underlined page numbers that appear at the bottom center of the page.

Case No.:  3:13cv608/MCR/EMT

experiences listed in the resume's text, and places the extracted information into a Resume Summary (Fleming Decl., pp. 11078–79 ¶¶ 7, 8). Resumix then compares the skills extracted from the applicant's resume to the skill requirements identified by the selecting official in the RAS and produces a list of potentially qualified applicants, known as the Resume Match List (*id.*, pp. 11077–81 ¶¶ 7, 8, 11, 14). To perform this process, Resumix relies upon a complex set of programming language and algorithms that focus on the identification of combinations of words to assess the degree of contextual matching with the skills needed for a given position (*id.*, p. 11080 ¶ 11). The technology is "knowledge based," meaning, it has the ability to read an applicant's resume in context (*id.*). It reads a resume and compares it to the skills required for a position and then identifies the applicants who have the needed skills for the vacancy (*id.*). If an applicant's name is not on the Resume Match List, it means that Resumix did not identify the applicant as having the skills required for the vacancy (as identified by the selecting official), or the applicant did not match the other required search criteria (for example geographic location, appointment eligibility, pay plan, series, and grade level) (*id.*, p. 11081 ¶ 14).

The Additional Data Sheet section of a Resumix resume is completed by the applicant (Fleming Decl. Supp., pp. 11083–84 ¶ 2). There are instances in which an applicant erroneously self-identifies himself as being within the defined area of consideration (for example, in a specific geographic location) or erroneously self-identifies himself as eligible for appointment under a certain category (*id.*). Resumix does not determine whether an applicant is correctly within the AOC or appointment eligibility category (*id.*). Resumix will extract an applicant and include him on the Resume Match List if the applicant's self-reported information in his resume matches the requirements included in the RAP and RAS (*id.*, pp. 11084–85 ¶ 2).

HRSC staffing specialists, known as Recruiters, review the resumes of the applicants on the Resume Match List, to determine/verify whether the applicant actually satisfies the AOC requirements, education requirements, specialized experience requirements, selective placement factors such as licenses or certifications, and other job requirements (e.g., "time-in-grade" requirements), and that the applicant matches the required and desired skills for the vacancy as identified by the selecting official in the RAP and RAS (Fleming Decl., p. 11078–81 ¶¶ 8, 11, 12, Fleming Decl. Supp., pp. 11084–05 ¶ 2). Recruiters place the names of those applicants who satisfy

qualification and eligibility requirements on a Case File Tracking Sheet (Fleming Decl., pp. 11081–82 ¶ 15). Those applicants are then listed as candidates on a certificate of eligibles, and those certificates (there may be more than one certificate issued for a vacancy) are referred to the selecting authority for consideration (Fleming Decl. Supp., p. 11094 ¶ 26). If an applicant does not satisfy qualification and eligibility requirements, he or she will not be included on a certificate of eligibles or considered for the position (Fleming Decl., pp. 11080–81 ¶ 12).

Welcome applied for each of the 33 vacancies by submitting his resume in the Resumix system (doc. 61, Welcome's Statement of Facts at 7 ¶ 1). His resume and updated resume are included in the summary judgment record (doc. 54, Ex. F; doc. 61, Ex. P13). At all times relevant to this action, Welcome was a civilian employee of the Agency, assigned to the Naval Air Station in Pensacola, Florida (doc. 54, Secretary Mabus's Statement of Facts ¶ 4; doc. 61, Welcome's Statement of Facts at 6 ¶ 1). In his updated resume, submitted February 20, 2004, Plaintiff indicated his geographic preference as Pensacola, Florida (doc. 61, Ex. P13, p. 4).

IV. DISCUSSION[5]

   A. <u>Vacancies MR222598, MR234910, MR254337/MR235730, MR237420, MR239116, MR242446, and MR252747</u>

Welcome claims that the Agency did not refer him to the selecting official for consideration to fill these vacancies (i.e., did not include him on a certificate of eligibles) because he is African American. The summary judgment evidence demonstrates that the selecting authorities cancelled the recruitment action as to those vacancies (doc. 54, Ex. M, p. 3096; Ex. Q, p. 4892; Ex. T, pp. 6325, 8664; Ex. U, p. 6371; Ex. V, p. 6619; Ex. W, p. 6599; Ex. BB, p. 8302; *see also* doc. 61, P35, p. 3128; Ex. P39, p. 4892; P42, p. 6206). Welcome is unable to make a prima facie case of discrimination as to these vacancies, because he cannot show that he suffered an adverse employment action, or that Caucasian/White applicants were treated more favorably than African American applicants as to these vacancies. Therefore, Secretary Mabus is entitled to summary

---

[5] Although only 29 vacancy numbers (MR's) appear in the Discussion section of this Report, all 33 vacancies at issue are discussed. Vacancy numbers MR023876, MR226554, MR232502, MR254337/MR235730, and MR252747 cover more than one request for recruitment action (*see* doc. 54, Exs. H, N, P, T, BB).

Case No.: 3:13cv608/MCR/EMT

judgment on Welcome's claim of discrimination as to vacancies MR222598, MR234910, MR254337/MR235730, MR237420, MR239116, MR242446, and MR252747.

> B.  <u>Vacancies MR012784, MR083491, MR211756, MR220968, MR226544, MR232502, MR235660, MR242675, MR248088, MR250936, MR256179, MR258413, MR258690, MR294304, MR713327, and MR980279</u>

Welcome claims that the Agency did not refer him to the selecting official for consideration to fill these vacancies (i.e., did not include him on a certificate of eligibles) because he is African American. The certificates of eligibles for these vacancies demonstrate that African American/Black applicants were referred to selecting officials for consideration to fill those vacancies (doc. 54, Ex. G, p. 263 and Ex. II; Ex. I, p. 1692; Ex. K, p. 2749 and Ex. II; Ex. L, p. 2778 and Ex. II; Ex. N, p. 3780 and Ex. II; Ex. P, pp. 4504–05 and Ex. II; Ex. S, p. 5633 and Ex. II; Ex. X, p. 6992 and Ex. II; Ex. Y, p. 7276 and Ex. II; , Ex. AA, pp. 7905–06 and Ex. II; Ex. CC, p. 9188; Ex. DD, pp. 9199–9200; Ex. EE, p. 9736; Ex. FF, p. 9914; Ex. GG, pp. 10377–78; Ex. HH, p. 10823; *see also* doc. 61, Ex. P29, pp. 263, 307; Ex. P33, pp. 2360–61; Ex. P34, p. 3044; Ex. P38, p. 4502; Ex. P43, p. 6499 (and doc. 54, Ex. II); Ex. P46, p. 6992; Ex. P47, pp. 7248–49, 7252; Ex. P51, p. 9184; Ex. P53, p. 9682; Ex. P54, p. 9914; Ex. P55, p. 10235). Welcome is unable to make a prima facie case of discrimination as to these vacancies, because he cannot show that Caucasian/White applicants were treated more favorably than African American/Black applicants in the referral process for these vacancies. Therefore, Secretary Mabus is entitled to summary judgment on Welcome's claims of discrimination as to vacancies MR012784, MR083491, MR211756, MR220968, MR226544, MR232502, MR235660, MR242675, MR248088, MR250936, MR256179, MR258413, MR258690, MR294304, MR713327, and MR980279 .

> C.  <u>Vacancies MR231497 and 235317</u>

Welcome claims that the Agency did not refer him to the selecting official for consideration to fill these vacancies (i.e., did not include him on a certificate of eligibles) because he is African American. Secretary Mabus proffered a legitimate, nondiscriminatory reason for not referring Welcome for those vacancies: his resume did not match the qualification requirements identified by the selecting official in the RAP and RAS for either of these positions, because his resume did not indicate he was currently working in a unit with Unit Identification Code ("UIC") 67004 or

67008, which encompasses units at the Base in Albany, Georgia (*see* doc. 53 at 2; doc. 54, Secretary Mabus's Statement of Facts ¶ 4, Ex. E, Fleming Decl. Supp., p. 11093 ¶ 25; Exs. O, R). Welcome does not dispute that UIC codes 67004 and 67008 include units at the Base in Albany Georgia, and that he worked at the Naval Air Station in Pensacola, Florida at the time of the vacancy announcements (*see* doc. 61, Welcome's Statement of Facts at 7 ¶ 1).

Welcome must create a genuine issue of material fact that Secretary Mabus's articulated reason for not referring him was merely a pretext for discrimination. He asserts, "Plaintiff as VEOA status is not restricted from Area of consideration (AOC) Unit Identification Codes (UIC) 67004, 67008, and 67009" (*see* doc. 61, Welcome's Statement of Facts at 7 ¶ 1). However, assuming that his VEOA status rendered him eligible to <u>apply</u> to vacancy announcements which had specific UIC's as a minimum qualification, he has not submitted any legal authority or evidence suggesting that his VEOA status entitled him to be <u>referred</u> to the selecting official as a qualified candidate despite the fact that he did not meet the UIC requirement included in the AOC for each of these positions.[6] Additionally, the undisputed evidence demonstrates that the applicant selected to fill each of these vacancies was qualified, because each selectee worked at the Base in Albany at the time each of those persons applied for the vacancy (*see* doc. 61, Ex. P37, p. 4447, Ex. P40, p. 5570).

Welcome has failed to "meet [the employer's] reason [for not referring him] head on and rebut it." *See* <u>Chapman</u>, 229 F.3d at 1030. He has also failed to present or identify any evidence suggesting that the failure to refer him as a candidate for each of these positions was motivated by discriminatory animus. Therefore, he failed to establish a genuine issue of material fact that Secretary Mabus's articulated reason for not referring him for consideration for each of these positions was merely a pretext for discrimination. Accordingly, Secretary Mabus is entitled to summary judgment on Welcome's claims of discrimination as to vacancies MR231497 and 235317.

---

[6] The VEOA provides that "for all merit promotion announcements . . . veterans . . . are eligible to apply." 5 U.S.C. §§ 3304(f)(3)–(4). Veterans "may not be denied the opportunity to compete for vacant positions for which the agency making the announcement will accept applications from individuals outside its own workforce under merit promotion procedures." 5 U.S.C. § 3304(f)(1). The VEOA expressly provides that the latter provision does not "confer an entitlement to veterans' preference that is not otherwise required by law." 5 U.S.C. § 3304(f)(3). Moreover, as discussed *supra*, any claim that the employer violated veterans preference laws or regulations is not properly before this Court.

Case No.: 3:13cv608/MCR/EMT

D.   Vacancies MR023876, MR177210, and MR249054

Welcome claims that the Agency did not refer him to the selecting official for consideration to fill these vacancies (i.e., did not include him on a certificate of eligibles) because he is African American. Secretary Mabus proffered a legitimate, nondiscriminatory reason for not considering Welcome for each of these vacancies: his resume did not include key words matching the qualification requirements identified by the selecting official in the RAP and RAS for any of these positions; therefore, the Resumix system did not extract Welcome's resume to a Resume Match List for any of these positions (*see* doc. 53 at 2). With regard to vacancy MR023876, the RAS listed the required skills as "budget process" and "business management," and the desired skills as "program objective memorandum (POM)," "activity based costing (ABC)," "installations business model (IBM)," "strategic planning," "conduct studies," and "business cost" (doc. 54, Secretary Mabus's Statement of Facts ¶ 8., ii & iii, Ex. H, p. 1667). With regard to vacancy MR177210, the RAS listed the required skills as "NBCD Individual Protective Equipment Shelf Life Management" and "Chemical Weapons Convention Treaty (CWC)" (doc. 54, Secretary Mabus's Statement of Facts ¶ 8., v, Ex. J, p. 2340–41). With regard to vacancy MR249054, the RAS listed the required skills as "manpower" and "conduct analytical studies" (doc. 54, Secretary Mabus's Statement of Facts ¶ 8., xxiv, Ex. Z, p. 7798–99).

Welcome must create a genuine issue of material fact that Secretary Mabus's articulated reason for not referring him for each of these vacancies was merely a pretext for discrimination. Welcome attempts to do this by presenting argument and evidence as to the selection process in general, and also as to the selection process for these specific vacancies. With regard to the selection process in general, Welcome argues that in some instances (not specifically any of these three vacancies), Human Resources Recruiters reviewed resumes of applicants who did not appear on the Resume Match List extracted by the Resumix system, and then referred those applicants to the selecting official for consideration (*see* doc. 60 at 4, 8–9; doc. 61 at 7 ¶ 2). Welcome submitted evidence that with regard to two vacancies (MR012784 and MR254337/MR235730), applicants contacted Human Resources staff and inquired as to why they was not referred to the selecting

officials for consideration (doc. 61, Ex. P29, p. 1072, 1073; Ex. P42, pp. 6272–73).[7] The evidence shows that upon receiving the inquiries, Human Resources staff manually reviewed those applicants' resumes to determine whether they matched the required skills identified by the selecting official in the RAS, and then added those applicants to certificates of eligibles after determining that their resumes matched the "intent" of the identified skills (doc. 61, Ex. P29, p. 1073; Ex. P42, pp. 6272–73).[8] Specifically with regard to vacancies MR023876, MR177210, and MR249054, Welcome asserts selecting officials selected retired/former Marine Corps officers to fill the vacancies, even though those candidates had less education than him (*see* doc. 60 at 4; doc. 61 at 9–11, 16–17 ¶5., ii & iii, v, xxiv; Ex. P48, pp. 6534, 6537–47, 6575–80, 7862–63, 7839).

Welcome's evidence is insufficient to show a genuine issue of fact for trial as to whether the reason provided by the Agency for not referring him to the selecting official for consideration for vacancy MR023876, MR177210, or MR249054 (i.e., his resume did not match the required skills identified by the selecting official in the RAS) was false. Welcome does not dispute that the Resumix system did not extract his resume to a Resume Match List for any of these vacancies. Further, he does not allege, nor did he submit any evidence suggesting, that he asked Human Resources staff to manually review his resume, or that he otherwise inquired as to why he was not referred, which would have prompted such a review. Moreover, Welcome's evidence that the persons selected to fill these particular vacancies were retired/former Marine Corps officers with less education than him does not "meet head on" and rebut Secretary Mabus's reason for not referring him, that his, his resume did not match the required skills. His evidence does not prove that the disparity in qualifications between him and the candidates referred to the selecting officials was "of

---

[7] In some instances, the applicant e-mailed a Human Resources staff member directly, and in other instances the applicant e-mailed the "ResumixQuestion" e-mail account.

[8] Welcome did not provide evidence of the race of any of the applicants whose resumes were manually reviewed. Both of the vacancies in which resumes were manually reviewed (vacancy MR012784 and MR235730/MR254337) were UIC-specific recruitments for applicants currently working at the Base in Albany, Georgia; therefore, Welcome did not qualify (doc. 54, Ex. G, p. 1103; doc. 54, Ex. T, p. 6349; doc. 61, Ex. P42, 8782). Additionally, the evidence shows that the certificate of eligibles and the list of interviewees for this vacancy included an African American candidate (specifically, MR012784 included Calvin Roberts, and MR235730/MR254337 included Shirley Sanders (*see* doc. 61, Ex. P29, pp. 263, 307; doc. 54, Ex. II; doc. 54, Ex. T, p. 5906–07; doc. 61, Ex. P42, pp. 6022–23). With regard to vacancy MR235730/MR254337, the evidence shows that the selecting official cancelled the vacancy (doc. 54, Ex. T, pp. 5905, 6325, 8664; doc. 61, Ex. P42, p. 6206).

Case No.: 3:13cv608/MCR/EMT

such weight and significance" that no reasonable, impartial person could have chosen those candidates over him. *See* Springer, 509 F.3d at 1349. Additionally, Welcome has not submitted any evidence that the true reason for not referring him for consideration for vacancy MR023876, MR177210, or MR249054 was his race; therefore, no rational factfinder could conclude that the employer's failure to refer him was discriminatory. For these reasons, Secretary Mabus is entitled to summary judgment on Welcome's claims as to vacancies MR023876, MR177210, and MR249054.

V.   CONCLUSION

The pleadings and summary judgment evidence show that there is no genuine issue of material fact, and that Secretary Mabus is entitled to judgment as a matter of law. Therefore, Secretary Mabus's motion for summary judgment should be granted.

For the foregoing reasons, it is respectfully **RECOMMENDED**:

1. That Defendant's motion for summary judgment (doc. 53) be **GRANTED**.
2. That the clerk enter judgment in favor of Defendant and close the file.

At Pensacola, Florida this 25th day of March 2015.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** United States v. Roberts**, 858 F.2d 698, 701 (11th Cir. 1988).**